[Cite as *Prokopchuk v. Prokopchuk*, 2012-Ohio-4480.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DAWNA PROKOPCHUK | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 2011CA00265 |
| THOMAS PROKOPCHUK | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Domestic Relations
                             Division Case No. 2009 DR 01416



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      September 24, 2012



APPEARANCES:

For Appellant:                          For Appellee:

ARNOLD F. GLANTZ                        JOHN A. BURNWORTH
4883 Dressler Rd. NW                    4775 Munson St. NW
Canton, OH 44718                        P.O. Box 36963
                                        Canton, OH 44735-6963

*Delaney, P.J.*

{¶1}   Plaintiff-Appellant Dawna Prokopchuk appeals the November 7, 2011 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, to terminate spousal support.  Defendant-Appellee is Thomas Prokopchuk.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Husband and Wife were married on September 27, 1980.  Wife filed a complaint for divorce and the parties stipulated incompatibility.  On July 27, 2010, the trial court issued a final divorce decree.  The length of the marriage was twenty-nine years and ten months.

{¶3}   Wife requested spousal support.  The trial court considered the factors under R.C. 3105.18(C)(1) to determine whether spousal support was both appropriate and reasonable.  Husband was employed at the time of the divorce and was on pace to earn $128,000 in 2010.  Wife was unemployed and worked as a homemaker during the marriage.  Relevant to this appeal, the trial court found Wife was in an ongoing relationship with a third party.  The trial court stated, "[h]owever, at this time there is no way to know whether that relationship will result in cohabitation or marriage.  At the current time, Wife's boyfriend has no statutory obligation to provide support for her, but Husband does have that obligation."  Pursuant to the R.C. 3105.18(C)(1) factors, the trial court found spousal support was appropriate and reasonable in the amount of $3,300 a month from Husband to Wife.

{¶4}   Spousal support began on August 1, 2010 and was to continue for 120 months until Wife died, remarried, or cohabitated with an unrelated third party male.

(Judgment Entry, July 27, 2010). The trial court retained jurisdiction over both the amount and length of spousal support.

{¶5} In June 2011, Husband filed a Motion to Terminate Spousal Support. Husband's motion alleged Wife cohabitated with an unrelated third party male, Nathan Yoder. The matter was assigned to the trial court judge whom previously presided over the parties' divorce proceedings. The trial court held an evidentiary hearing on October 31, 2011. At the hearing, Wife, Nathan Yoder, and Husband testified. Wife stipulated Nathan Yoder and she were living together for a sustained duration. She disputed that she and Nathan Yoder were sharing living expenses.

{¶6} On November 7, 2011, the trial court issued its ruling granting Husband's motion to terminate spousal support. The trial court found the evidence at the divorce hearing did not establish Wife was cohabitating with Nathan Yoder. The testimony presented at the October 31, 2011 hearing, however, caused the trial court to reach a different conclusion that Wife and Nathan Yoder were cohabitating because they were sharing expenses. The trial court terminated Husband's spousal support obligation effective November 15, 2011. The trial court did not retain jurisdiction over spousal support in the November 7, 2011 judgment entry.

{¶7} It is from this decision Wife now appeals.

## ASSIGNMENTS OF ERROR

{¶8} Wife raises four Assignments of Error:

{¶9} "I. THE TRIAL COURT'S DECISION TO TERMINATE SPOUSAL SUPPORT BASED ON COHABITATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} "II. THE TRIAL COURT ERRED IN RELYING ON EVIDENCE THAT WAS NOT IN THE RECORD.

{¶11} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT RESERVING JURISDICTION TO MODIFY THE SPOUSAL SUPPORT AWARD.

{¶12} "IV. THE TRIAL COURT ERRED IN ELIMINATING RATHER THAN REDUCING THE SPOUSAL SUPPORT AWARD."

## ANALYSIS

### I.

{¶13} Wife argues in her first Assignment of Error that it was against the manifest weight of the evidence for the trial court to terminate Husband's spousal support obligation based on Wife's cohabitation. We disagree.

{¶14} "Within the context of a divorce decree, 'cohabitation' contemplates a relationship that approximates, or is the functional equivalent of, a marriage." *Keeley v. Keeley*, 12th Dist. Nos. CA1999-07-075, CA1999-08-080, at 3, 2000 WL 431362 (Apr. 17, 2000) citing *Piscione v. Piscione*, 85 Ohio App.3d 273, 275, 619 N.E.2d 1030 (9th Dist. 1992). In determining whether cohabitation exists, we note the holding in *Moell v. Moell*, 98 Ohio App.3d 748, 752, 649 N.E.2d 880 (6th Dist. 1994):

> Many factors may be considered in deciding whether cohabitation exists in a particular set of facts. We previously addressed the issue of cohabitation in *Dickerson v. Dickerson, supra*. In that case, we noted that "cohabitation" describes an issue of lifestyle, not a housing arrangement. *Dickerson, supra*, 87 Ohio App.3d at 850, 623 N.E.2d at 239. Further, when considering the evidence, the trial court should look

to three principal factors. These factors are "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Id.* at fn. 2, citing *Birthelmer v. Birthelmer* (July 15, 1983), Lucas App. No. L83–046, 1983 WL 6869.

*Shippy v. Shippy*, 5th Dist. No. 10CA000016, 2010–Ohio–5332, ¶ 28; *See also*, *Waters v. Boney*, 5th Dist. No. 2008-CA-00127, 2009-Ohio-574.

{¶15} In reviewing a case involving domestic violence, the Ohio Supreme Court set forth two primary factors to consider in determining cohabitation:

Having considered the above definitions of "cohabitant" and "family or household member," we conclude that the essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*Bickham v. Bickham,* 5th Dist. No. 11-CA-9, 2011-Ohio-4213, ¶ 6-7 quoting *State v. Williams*, 79 Ohio St.3d 459, 465, 683 N.E.2d 1126 (1997).

{¶16} This Court examined "whether or not a particular living arrangement rises to the level of a * * * 'cohabitation'" in *Yarnell v. Yarnell*, 5th Dist No. 05CAF0064, 2006-Ohio-3929, ¶ 42 citing *Crissinger v. Crissinger*, 7th Dist. No. 05-HA-579, 2006-Ohio-754. We stated that "cohabitation" is a factual question to be initially determined by the trial court. *Yarnell, supra*, citing *Dickerson v. Dickerson*, 87 Ohio App.3d 848, 851, 623 N.E.2d 237 (6th Dist. 1993). A finding as to cohabitation that is supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993). In determining whether competent and credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Bey v. Bey,* 3rd Dist. No. 10–08–12, 2009–Ohio–300, ¶ 15, quoting *Barkley v. Barkley,* 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997).

{¶17} In the present case, Wife does not dispute that she and Nathan Yoder are living together and have lived together for a sustained duration. Wife disputes that she and Nathan Yoder are cohabitating because they do not share expenses with respect to financing and day-to-day incidental expenses.

{¶18} The following testimony was elicited at the October 31, 2011 hearing. Yoder testified he and Wife moved in together at his apartment at 1807 Fulton on December 2, 2009. Yoder testified he was employed as a homebuilder and earned approximately $30,000 per year. Wife was unemployed and her only source of income was spousal support. Yoder paid the rent and electric bill; Wife paid the cable bill. Yoder and Wife then moved to 2540 Edison. Wife paid the rent and all utilities at that residence. The parties testified they did not share expenses in any way. If Yoder paid for utilities at any time, he testified he reimbursed Wife with cash.

{¶19} Wife was given a 2009 Subaru pursuant to the divorce decree. Wife did not make payments on the vehicle and Husband took the vehicle to prevent it from being repossessed. Yoder allowed Wife to drive his vehicle. Yoder paid the automobile insurance on this vehicle.

{¶20} At the hearing, Wife's bank records were admitted into evidence. As stated above, Wife's only income was $3,300 in monthly spousal support payments. Wife had $5,894.60 in cash deposits into her bank account. Wife explained that she used Pay Day Loans to make cash deposits into her bank account. The trial court accounted for $2,050 of the $5,894.60 in cash deposits but could not explain the remaining $3,844.60 in deposits.

{¶21} In making its decision to grant Husband's motion to terminate his spousal support obligation, the trial court relied upon our decision in *Bickham v. Bickham*, 5th Dist. No. 11-CA-9, 2011-Ohio-4213. The trial court first found Yoder and Wife lived together for a sustained duration. The trial court next examined whether the evidence showed Yoder and Wife shared expenses.

{¶22} The trial court first found Wife and Yoder to not be credible, considering the differences in their testimony given at the original divorce proceeding and their testimony at the October 31, 2011 hearing. The trial court next reviewed the evidence presented as to the sharing of expenses. The unexplained cash deposits in Wife's bank account and the Wife's use of Yoder's vehicle for free demonstrated to the court that Yoder and Wife shared expenses with respect to financing and day-to-day incidental expenses.

{¶23} In *Bickham*, this Court reviewed a case where a former wife and her paramour lived together for a sustained duration. The issue was whether there was evidence of sharing of expenses and finances on a day-to-day basis to find cohabitation. We stated:

> Both appellee and Mr. Hahn stated that Mr. Hahn provided no support for appellee or her residence. T. at 15, 125. Although Mr. Hahn admitted to using appellee's utilities and cable, he insisted that he did not pay for anything and was not an extra burden on the utilities. T. at 205, 217–218. At one point, Mr. Hahn took the absurd position that he did not even use toilet paper. T. at 184. Both appellee and Mr. Hahn maintained that funds to appellee via credit card purchases or the loan to her for a down payment on her condo were to be paid back. T. at 38, 138–139, 160. They attempted to support this argument with spreadsheets that were not drafted until after appellant's motion was filed. T. at 151. In fact, Mr. Hahn admitted the balance forward used to initiate the spreadsheet could not be documented. T. at 177. Mr. Hahn

permitted appellee to have access to his credit card accounts up to their limits. T. at 155–156.

Appellant presented evidence that although appellee's income was limited to her employment ($20,000–$21,000), child support ($1,150.00 per month) and spousal support ($1,750.00 per month), her expenses exceeded the total by $139.72 a month. T. at 98–99. Appellee could not explain the deficit nor could she explain how her checking account deposits were some $30,000 in excess of her income. T. at 55–56. Even if we accepted appellee's statement that her parents gifted her possibly $5,000 a year (T. at 33), it does not account for the unexplained funds.

Proof of shared expenses does not have to be by direct evidence alone, but can be established by circumstantial evidence. In this case, the direct evidence of the unexplained funds leads to the logical inference that appellee is receiving funds from Mr. Hahn.

Either we accept Mr. Hahn's position that he is a visitor at appellee's residence, living off the income of a woman who makes substantially less than him, or we make the inference that these are two intelligent individuals who understand the cohabitation issue (Mr. Hahn also pays spousal support) who are trying to delude the trial court. Either Mr. Hahn is a "moocher" or he is paying his way. Both agree if they were married, the financial issues would be the same save health benefits. T. at 105, 109. We conclude the third factor in determining

cohabitation, shared expenses with respect to financing and day-to-day incidental expenses, has been minimally satisfied and the trial court erred in not finding cohabitation.

*Bickham*, at ¶22-25.

{¶24} We have reviewed the record in this case and find the trial court's reliance on our holding in *Bickham* as to the issue of cohabitation is supported by competent and credible evidence. The evidence shows that Yoder and Wife shared expenses with respect to financing and day-to-day incidental expenses.

{¶25} Wife's first Assignment of Error is overruled.

*II.*

{¶26} Wife argues in her second Assignment of Error that the trial court erroneously relied upon the record in the divorce proceeding to reach its decision on Husband's motion to terminate spousal support. Wife states no transcript was made of the divorce trial so there was no evidence before the trial court as to Wife's prior testimony as to cohabitation.

{¶27} In this case, the trial court judge presiding over the motion to terminate spousal support is the same judge that heard and ruled on the parties' divorce proceeding. A review of the November 7, 2011 judgment entry shows the trial court refers to the testimony in the divorce proceeding, but does not rely solely on that testimony to make its decision that Yoder and Wife are cohabitating. The trial court states that while it believed Wife misrepresented in the original trial that she was not sharing expenses with Yoder, he found the evidence presented at the October 31, 2011 hearing made the court believe they were currently sharing expenses. The trial

court also found there were unexplained cash deposits in Wife's bank account and Wife was driving Yoder's van for free.  (Judgment Entry, November 7, 2011).  Based on this evidence, the trial court concluded under *Bickham* that Yoder and Wife were cohabitating.

{¶28} Wife's second Assignment of Error is overruled.

*III.*

{¶29}  Wife contends in her third Assignment of Error the trial court abused its discretion in failing to reserve jurisdiction to modify the spousal support award in the November 7, 2011 judgment entry.  Wife makes a policy argument that if we affirm the trial court's decision to terminate spousal support based on cohabitation, if that alleged relationship were to end, Wife would have no future source of financial support if the trial court does not retain jurisdiction over spousal support.

{¶30} The decision of whether to retain jurisdiction over spousal support is a matter within the domestic relations court's discretion.  *Smith v. Smith*, 6th Dist. No. L–98–1027, 1998 WL 904941 (Dec. 31, 1998), citing *Johnson v. Johnson*, 88 Ohio App.3d 329, 331, 623 N.E.2d 1294 (5th Dist. 1993).  An abuse of discretion implies a trial court's decision is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶31} We find no abuse of discretion in this instance.  "When cohabitation is established, the obligation to pay spousal support can be properly terminated even if the relationship between the recipient spouse and the paramour comes to an end prior to the end of the period within which the former spouse is required to pay spousal support under the terms of the divorce decree.  *Perri v. Perri* (1992), 79 Ohio App.3d

845, 852, 608 N.E.2d 790. Thus, termination of cohabitation neither revives a spousal support obligation, nor results in the continuation of support." *Keeley v. Keeley, supra.*

{¶32} Wife's third Assignment of Error is overruled.

*IV.*

{¶33} Wife argues in her fourth Assignment of Error the trial court erred in terminating spousal support, rather than reducing the spousal support award.

{¶34} Modifications of spousal support are reviewable under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶35} The parties' divorce decree stated spousal support began on August 1, 2010 and was to continue for 120 months until Wife died, remarried, or cohabitated with an unrelated third party male. (Judgment Entry, July 27, 2010). The trial court retained jurisdiction over both the amount and length of spousal support.

{¶36} The divorce decree is explicit in its terms that Wife received spousal support until Wife cohabitated with an unrelated third party male. As we have affirmed above, there was competent, credible evidence for the trial court to determine Wife cohabitated with Yoder. As such, there was no abuse of discretion for the trial court to follow the dictates of the divorce decree and terminate spousal support as opposed to a reduction in spousal support.

{¶37} Wife's fourth Assignment of Error is overruled.

**CONCLUSION**

{¶38} The four Assignments of Error of Plaintiff-Appellant Dawna Prokopchuk are overruled.

{¶39} The judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

PAD:kgb

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

DAWNA PROKOPCHUK  :
   :
   :
   :  JUDGMENT ENTRY
Plaintiff-Appellant  :
   :
   :
-vs-  :  Case No.  2011CA00265
   :
THOMAS PROKOPCHUK  :
   :
   :

Defendant-Appellee           :

                                  :

For the reasons stated in our accompanying Opinion on file, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN