[Cite as *Huston v. Huston*, 2014-Ohio-5654.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DOUGLAS C. HUSTON | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Petitioner-Appellant | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2013CA0030 |
| MARILYN J. HUSTON | |
| Petitioner-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:  Civil Appeal from the Court of Common
Pleas, 10 DV 686

JUDGMENT:  Reversed and Remanded

DATE OF JUDGMENT ENTRY:  December 22, 2014

APPEARANCES:

For Petitioner-Appellant

EUGENE B. LEWIS
CELIA M. KILGARD
TAFT, STETTINIUS & HOLLISTER
65 East State Street, Suite 1000
Columbus, Ohio 43215

For Petitioner-Appellee

ROBERT E. WEIR
FRASE, WEIR, BAKER and
McCULLOUGH CO.
305 Main Street
Coshocton, Ohio 43812

*Wise, J.*

{¶1}. Appellant Douglas C. Huston appeals from a post-decree decision by the Court of Common Pleas, Coshocton County, denying his motion to terminate his spousal support obligation. Appellee Marilyn J. Huston is appellant's former spouse. The relevant facts and procedural history leading to this appeal are as follows.

{¶2}. Appellant Douglas and Appellee Marilyn were married in August 1988. One child was born of the marriage in 1993. On October 1, 2010, appellant filed a complaint for divorce against appellee in the Coshocton County Court of Common Pleas. On December 20, 2010, following a joint request, the trial court converted the action to a dissolution proceeding.

{¶3}. The parties' marriage was legally terminated by a decree of dissolution and an incorporated separation agreement which were finalized on January 20, 2011. Pursuant to the terms of said separation agreement, appellant was required to pay spousal support to appellee in the amount of $500.00 per month, commencing in January 2011. According to the parties' separation agreement, the order to pay spousal support will terminate upon any of several conditions, including appellee's "cohabitation with an unrelated person of the opposite sex."

{¶4}. On November 28, 2012, appellant filed a motion to terminate his spousal support obligation. At that time, appellant also filed interrogatories and document requests.

{¶5}. The matter initially came on for a hearing before a magistrate on January 11, 2013. Appellee did not appear for said hearing, and had not responded to the interrogatories and document requests prior thereto.

{¶6}. On March 5, 2013, the magistrate filed a decision denying appellant's motion to terminate spousal support. The magistrate held, inter alia, that appellant did not establish the address where appellee was residing was the same as her alleged cohabiter.

{¶7}. On March 19, 2013, appellant filed objections to the magistrate's decision.

{¶8}. On May 10, 2013, the trial court issued a judgment entry permitting the submission of additional evidence on the issue of termination of spousal support and set an evidentiary hearing for July 22, 2013.

{¶9}. On June 14, 2013, appellant served requests for admissions upon appellee. On June 26, 2013, appellee's responses to the requests for admissions were received by appellant's counsel. The requests for admissions were thereafter admitted to the record.

{¶10}. On July 16, 2013, appellant filed a motion for an order to compel appellee to respond to the remaining discovery requests and production of documents that were filed with the trial court on November 28, 2012.

{¶11}. On July 16, 2013, the trial court issued a judgment entry ordering appellee to respond to appellant's discovery requests within three days. On July 19, 2013, after newly retained counsel for appellee contacted counsel for appellant, the parties agreed to a brief continuance of the hearing scheduled for July 22, 2013 to allow appellee to provide appellant with discovery. Said counsel, who had been previously retained by appellee for the dissolution proceedings, re-entered an appearance in the action following the filing of a consent judgment entry on July 22, 2013.

{¶12}. On July 29, 2013, pursuant to the consent entry, the hearing on the objections was continued until August 7, 2013. On August 6, 2013, appellant moved for sanctions pursuant to Civ.R. 37(B) based on appellee's failure to respond to discovery. On August 7, 2013, appellee filed a memorandum contra regarding the request for sanctions.

{¶13}. On August 7, 2013, the trial court heard evidence and testimony related to the objections and the motion for termination of spousal support. The testifying witnesses were appellee, appellant, Nicole Huston (daughter), and Karrie Huston (former daughter-in-law). Appellee testified, inter alia, that she had signed the separation agreement and understood that she was bound by its terms, including the conditions for termination of spousal support. *See* Tr. at 21-22.

{¶14}. On November 27, 2013, the trial court issued a judgment entry denying appellant's motion to terminate. The court decided the issue on the merits, although it also made a finding that appellee had not been properly served with the motion.

{¶15}. On December 26, 2013, appellant filed a notice of appeal. He herein raises the following nine Assignments of Error:

{¶16}. "I. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN DETERMINING THAT THERE WAS NO FINANCIAL ASSISTANCE TO ESTABLISH COHABITATION.

{¶17}. "II. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN DENYING APPELLANT'S MOTION TO TERMINATE SPOUSAL SUPPORT BY FINDING THAT APPELLEE WAS NOT COHABITATING WITH RANDY THOMAS AS

THE TRIAL COURT'S DECISION WAS UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

{¶18}. "III. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, BY RELYING UPON EVIDENCE THAT WAS NOT INTRODUCED IN THE EVIDENTIARY HEARING AND NOT IN THE RECORD.

{¶19}. "IV. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN FINDING THAT IT DID NOT HAVE JURISDICTION TO PROCEED OVER APPELLANT'S MOTION TO TERMINATE SPOUSAL SUPPORT.

{¶20}. "V. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN FINDING THAT APPELLANT FAILED TO SERVE OBJECTIONS ON APPELLEE PURSUANT TO CIV.R. 5(A).

{¶21}. "VI. THE TRIAL COURT ERRED, AND ABUSED ITS DISCRETION, IN FINDING THAT APPELLANT COULD NOT INTRODUCE ADDITIONAL EVIDENCE AT THE EVIDENTIARY HEARING BEFORE THE JUDGE.

{¶22}. "VII. THE TRIAL COURT ABUSED ITS DISCRETION BY RELYING ON FACTS THAT WERE NOT IN THE RECORD TO SUPPORT ITS HOLDING.

{¶23}. "VIII. THE TRIAL COURT ERRED IN FAILING TO ORDER APPELLEE TO REPAY APPELLANT FOR THE SPOUSAL SUPPORT PAID TO HER DURING HER COHABITATION.

{¶24}. "IX. THE TRIAL COURT ERRED IN FAILING TO ORDER SANCTIONS AGAINST APPELLEE FOR FAILURE TO RESPOND TO THE DISCOVERY REQUESTS TIMELY AS ORDERED BY THE TRIAL COURT."

I., II.

{¶25}. In his First and Second Assignments of Error, appellant contends the trial court erred and/or abused its discretion in finding he had failed to establish the existence of cohabitation by appellee, particularly regarding the court's consideration of the factor of shared financial assistance. We agree.

{¶26}. A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An appellate court likewise reviews a trial court's decision regarding the termination of spousal support under an abuse of discretion standard of review. *Hartman v. Hartman*, 9th Dist. Summit No. 22303, 2005–Ohio–4663, ¶ 13. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶27}. Where an obligor's motion to terminate spousal support is based on the occurrence of a condition subsequent, expressly identified in the decree, a trial court has jurisdiction to terminate the spousal support obligation if it determines that the obligee was cohabiting with another person in a relationship that was comparable to marriage. *See Guggenbiller v. Guggenbiller*, 9th Dist. Lorain No. 10CA009871, 2011–Ohio–3622, ¶ 6. "Whether or not a particular living arrangement rises to the level of lifestyle known as 'cohabitation' is a factual question to be initially determined by the trial court." *Moell v. Moell* (1994), 98 Ohio App.3d 748, 752, 649 N.E.2d 880, citing *Dickerson v. Dickerson* (1993), 87 Ohio App.3d 848, 851, 623 N.E.2d 237, 239. " '[C]ohabitation' describes an issue of lifestyle, not a housing arrangement." *Id.,* citing

*Dickerson, supra,* at 850, 623 N.E.2d at 239. When considering this issue, a trial court should look to three principal factors: "(1) [A]n actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Moell, supra* (additional citations and internal quotations omitted). *See*, *also*, *Yarnell v. Yarnell,* 5th Dist. Delaware No. 05 CAF 0064, 2006–Ohio–3929, ¶ 43.

{¶28}. In the case sub judice, the trial court found that appellee had been living with her boyfriend, Randy Thomas, since July 2010, but determined " *** they did not share expenses with respect to financing and day-to-day incidental expenses." Judgment Entry, November 27, 2013, at 7. At the evidentiary hearing upon appellant's objections in this matter, appellee testified that she has had a sexual relationship with Randy that has been ongoing since July 2010, and that as of the date of the hearing of August 7th 2013, she had been living with Randy in Warsaw, Ohio, for more than two years.[1] Tr. at 19, 23-24. Randy owns the Warsaw residence and is responsible for the real estate taxes and the mortgage payments, if any. Tr. at 27. Appellee did not pay Randy for rent (although she had tried earlier to do so) and she did not have a lease agreement with him. Tr. at 36, 127. Appellee testified that she has never received any financial support from Randy. Tr. at 114. Appellee testified that she generally does not pay Randy expenses and utilities, and she does not reimburse Randy for any payments that he makes. Tr. at 36. However, she conceded that she pays one-half of the electric bill "most of the time probably." Tr. at 36. She has also paid for television via Dish TV and/or Direct TV. Tr. at 37. Appellee and Randy shared a bed and used the same

---

[1] Appellee's future plans are not completely clear in the record; she stated at one point that she was "in the process" of moving into another residence. *See* Tr. at 132.

bedroom. Tr. at 30. While living there, appellee kept all of her clothing at the house. *Id.* Appellee also testified that Randy pays her cash as reimbursement for his cell phone expenses, even though he was not always consistent in that arrangement. Tr. at 71.

{¶29}. The evidence also demonstrated that appellee at times has driven Randy's Chevrolet truck, and he has driven her Honda automobile. Tr. at 35-36. Appellant also made reference to a four-wheeler at the residence that she and Randy would share. Tr. at 46. Appellee admitted to sending mail to appellant with a return address of Randy's Warsaw house number and street. Tr. at 40. Furthermore, appellee got some of her mail at the Warsaw residence and some via a PO Box. Tr. at 30-31. In terms of household work, evidence was adduced that appellee generally did most of the cooking, dishwashing and laundry, while Randy did yard work and other outside maintenance, although housecleaning was shared. *See* Tr. at 36, 97.

{¶30}. At one point, appellee and Randy announced they were engaged, and appellee began wearing an engagement ring. The engagement was on for about two months. Tr. at 33-34. Appellee and Randy had portrait photographs taken of the two of them and their children, one of which was described as a "family photograph." Tr. at 31, 33. Appellee also spent holidays with Randy, including hosting holiday events at the residence. Tr. at 46. Appellee and Randy also went to social events together such as activities at the members-only Eagles Club. Tr. at 47-48. In June 2013, the couple attended appellee's father's funeral together. Tr. at 48.

{¶31}. The testimony of the parties' daughter, Nicole Huston, who had resided with appellee and Randy for about one year, buttressed some of the aforesaid information. *See* Tr. at 92-101.

{¶32}. Appellee also made various improvements to the residence in question. She testified that she paid to renovate a bathroom at the residence including replacing the bathtub, toilet, walls, and vanity. Tr. at 41, 117. Appellee also recalled that she paid about $2,900.00 to install an air conditioning system at the residence. Tr. at 41-42, 117. She calculated that she contributed a total of over $4,000.00 in improvements within the first four to five months after her dissolution. Tr. at 128-129. Appellee also purchased about $3,000.00 of furniture for use at Randy's house and brought in a dishwasher that was part of the property division in her dissolution from appellant. Tr. at 44-45. Appellee testified that the air-conditioning unit would remain part of the residence. Tr. at 42, 128.

{¶33}. Appellee responds in her brief, inter alia, that she and Randy did not commingle assets and did not jointly hold or own credit cards, bank accounts, investments, or real estate. Appellee's Brief at 7; Tr. at 115. Furthermore, Nicole Huston recalled that she never observed either Randy or appellee exchanging money with each other, splitting bills while eating out, or reimbursing each other for groceries. Tr. at 93-96. However, we find the evidence clearly supports the existence of a rent-free "living together" arrangement between appellee and Randy that, financially speaking, at least included the sharing of automobile and four-wheeler usage, appellee's monetary contribution toward certain furniture and upgrades to the residence, and periodic sharing of cell phone and electricity costs. Recently, in *Sage v. Gallagher*, 5th Dist. Richland No. 13 CA 64, 2014-Ohio-1598, ¶ 15, we cautioned against strict application of the *Moell* test, which includes consideration of the factor of a couple's sharing of financing and day-to-day incidental expenses. We expressed our determination that " *** the overarching principle in such cases is that '[c]ohabitation contemplates a

relationship that approximates, or is the functional equivalent of, a marriage.' " *Id.*, citing *Keeley v. Keeley,* 12th Dist. Clermont Nos. CA99–07–075, CA99–080–080, 2000 WL 431362, citing *Piscione v. Piscione,* 85 Ohio App.3d 273, 275, 619 N.E.2d 1030 (9th Dist.1992). Upon review of the record in the case sub judice, we hold the trial court's focus on the shared daily expenses aspect of *Moell*, as grounds for finding no cohabitation between appellee and Randy, was overemphasized and unreasonable given the substantial evidence of their relationship approximating the status of marriage.

**{¶34}.** Accordingly, we conclude the trial court abused its discretion in failing to terminate appellant's spousal support obligation to appellee under the facts and circumstances of this case.

**{¶35}.** Appellant's First and Second Assignments of Error are sustained.

IV., V.

**{¶36}.** In his Fourth and Fifth Assignments of Error, appellant contends the trial court erred and/or abused its discretion in finding it did not have jurisdiction to proceed for want of service of appellant's motion to terminate spousal support and Civ.R. 53 objections.

**{¶37}.** Civ.R. 75 is applicable to post-decree matters. *Szerlip v. Szerlip*, 5th Dist. Knox No. 01CA09, 2002-Ohio-2541. Civ.R. 75(J) states in pertinent part as follows: "The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6. ***." Nonetheless, when a party appears in court, fails to object to improper service pursuant to Civ.R. 75(J), and defends on the merits of the case, that party will be deemed to have waived the issue of service. *Hetlin v. Hetlin*, 3rd Dist.

Seneca No. 13–14–08, 2014-Ohio-4997, ¶ 26, citing *Laver v. Laver,* 3d Dist. Henry No. 7–08–01, 2008–Ohio–6068, ¶ 9.

**{¶38}.** In the case sub judice, we first find the trial court had continuing jurisdiction to proceed over issues of spousal support based on its reservation of jurisdiction to modify future awards in the parties' separation agreement and decree of dissolution. In her decision of March 5, 2013, the magistrate noted that appellee had not appeared, nor was counsel present on her behalf. Magistrate's Decision at 1. However, the magistrate had noted on the record that appellee had been personally served with notice (Tr., January 10, 2013, at 3), and the magistrate proceeded to the merits, finding appellant had failed to prove termination should be ordered. Decision at 1-2. Thereafter, at the evidentiary hearing on August 7, 2013 on appellant's objections to said decision, the trial court noted that both appellant and appellee were present with their respective attorneys. The court further stated that " *** the parties had agreed to set the matter for evidentiary hearing on today's date." Tr., August 7, 2013, at 5.

**{¶39}.** As an appellate court, we are not required to issue an advisory or merely academic ruling. *See, e.g.*, *In re Merryman/Wilson Children*, Stark App.Nos. 2004 CA 00056 and 2004 CA 00071, 2004-Ohio-3174, ¶ 59, citing *State v. Bistricky* (1990), 66 Ohio Aat3d 395, 584 N.E.2d 75. In the case sub judice, although both sides have duly briefed the service issues for us, we find further analysis unnecessary where appellee appeared for the evidentiary hearing before the judge and a decision was reached on the merits, despite the court's seemingly contradictory written finding that it lacked jurisdiction to proceed as to appellee.

**{¶40}.** Appellant's Fourth and Fifth Assignments of Error are therefore found to be moot.

### III., VI., VII., IX.

**{¶41}.** In his Third, Sixth, Seventh, and Ninth Assignments of Error, appellant raises several issues pertaining to the trial court's rulings during the case regarding evidence and discovery.

**{¶42}.** Based on our conclusions regarding appellant's First and Second Assignments of Error, we find the Third, Sixth, Seventh, and Ninth Assignments of Error to be moot.

### VIII.

**{¶43}.** In his Eighth Assignment of Error, appellant contends the trial court erred and/or abused its discretion in failing to require appellee to reimburse him for spousal support she received post-cohabitation. In essence, appellant is arguing that the termination of spousal support should have been made retroactive.

**{¶44}.** Generally, if a court determines that a support order should be modified, it may make the order effective from the date the motion to modify was filed. Such determination is a matter within the trial court's sound discretion. *Sommers v. Sommers*, 5th Dist. Stark No. 2009CA00188, 2010-Ohio-1831, ¶ 45 (citations omitted). Specifically, a retroactive order terminating support upon cohabitation is permissible when the separation agreement or divorce decree provides that support shall terminate upon cohabitation. *Jennings v. Jennings*, 8th Dist. Cuyahoga No. 68782, 1995 WL 628336 (citations omitted). Nonetheless, "courts must be careful in making modifications retroactive because the retroactive reduction of spousal support which

fails to consider the recipient's reliance upon or expectation of receiving constitutes substantial injustice and is an abuse of discretion." *Dawson v. Dawson*, 5th Dist. Stark No. 1999CA00063, 1999 WL 770795, citing *McGuire v. McGuire* (April 6, 1995), Cuyahoga App. No. 67030, 1995 WL 168465.

{¶45}. Because the trial court did not reach the issue based on its decision to deny appellant's motion to terminate, we hereby sustain appellant's Eighth Assignment of Error to the extent that the matter will be remanded for a hearing to determine the date of termination of spousal support.

{¶46}. For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Coshocton County, Ohio, is hereby reversed and remanded for further proceedings consistent herewith.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.

JWW/d 1209