[Cite as *Grischow v. Grischow*, 2019-Ohio-1856.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| LARRY W. GRISCHOW | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | |
| -vs- | Case No. 18 CAF 07 0052 |
| MERILEE GRISCHOW | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:        Civil Appeal from the Court of Common
                                Pleas, Case No.  13 DR A 12 0592


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         May 13, 2019


APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

ANTHONY W. GRECO                        CHRISTOPHER L. TROLINGER
HARI K. SATHAPPAN                       PETROFF LAW OFFICES LLC
6810 Caine Road                         140 East Town Street, Suite 1070
Columbus, Ohio  43235                   Columbus, Ohio  43215

*Wise, J.*

**{¶1}** Plaintiff-Appellant Larry W. Grischow appeals from the post-decree decision of the Delaware County Court of Common Pleas, Domestic Relations Division (hereinafter "trial court"), denying his motion to terminate the spousal support obligation ordered in his 2014 divorce. Defendant-Appellee Merilee Grischow is appellant's former spouse. The relevant facts leading to this appeal are as follows.

**{¶2}** The parties were married in 1995 in Illinois. Three children were born of the marriage, although two are now emancipated.

**{¶3}** On May 6, 2014, the trial court issued a divorce decree incorporating a written separation agreement, which included a $5,000.00 per month spousal support provision, with appellee as the obligee, for a maximum period of ninety-six months. As pertinent to the present appeal, the separation agreement specifically stated that said obligation would "terminate upon *** [appellee's] cohabitation with an unrelated adult as though married, but without a marriage ceremony[.]" Separation Agreement at 2.

**{¶4}** On November 15, 2016, appellant filed a motion to terminate his spousal support obligation, essentially alleging that appellee was cohabitating with an unrelated adult male, R.V. Appellant also filed *inter alia* a request for admissions, to which appellee responded on January 9, 2017.

**{¶5}** In addition, appellee filed a motion to modify child support on March 11, 2017. Also, on September 14, 2017, appellee filed a motion for attorney fees.

**{¶6}** The aforesaid issues proceeded to an evidentiary hearing before a magistrate on October 19 and 20, 2017.

{¶7} On February 23, 2018, the magistrate issued a 17-page decision denying appellant's motion to terminate spousal support. The magistrate also therein denied appellee's motion to modify child support, but granted, in part, appellee's motion for attorney fees, awarding her the sum of $6,307.50.

{¶8} On March 7, 2018, appellant filed objections to the magistrate's decision regarding the denial of his motion to terminate spousal support and the partial granting of appellee's motion for attorney fees. In addition, on May 7, 2018, appellant filed supplemental objections.

{¶9} May 21, 2018, appellee filed a memorandum in opposition to appellant's supplemented objections.

{¶10} On June 22, 2018, the trial court issued a 14-page judgment entry overruling all of appellant's objections and adopting the decision of the magistrate.

{¶11} On July 11, 2018, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:

{¶12} "I. THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF HUSBAND-APPELLANT IN CONCLUDING THAT THE UNDISPUTED FACTS DID NOT ESTABLISH COHABITATION BETWEEN WIFE-APPELLEE AND MR. [R.V.] PURSUANT TO *STATE V. MCGLOTHAN.*

{¶13} "II. THE TRIAL COURT ERRED TO THE MATERIAL PREJUDICE OF HUSBAND-APPELLANT IN CONCLUDING THAT THE UNDISPUTED FACTS DID NOT ESTABLISH COHABITATION BETWEEN WIFE-APPELLEE AND MR. [R.V.] PURSUANT TO *MOELL V. MOELL* AND *STATE V. WILLIAMS.*

**{¶14}** "III.   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT WIFE-APPELLEE AND MR. [R.V.] ARE NOT COHABITATING.

**{¶15}** "IV.   THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE MATERIAL PREJUDICE OF HUSBAND-APPELLANT IN GRANTING $6,307.50 IN ATTORNEY'S FEES TO WIFE-APPELLEE."

**{¶16}** We will address these assigned errors partially out of sequence.

II., III.

**{¶17}** In his Second and Third Assignments of Error, Appellant Larry argues the trial court erred and/or abused its discretion in concluding that the evidence presented did not establish cohabitation between Appellee Merilee and her paramour, R.V. We disagree.

<u>Standards of Review</u>

**{¶18}** A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An appellate court likewise reviews a trial court's decision regarding the termination of spousal support under an abuse of discretion standard of review. *Huston v. Huston*, 5th Dist. Coshocton No. 2013CA0030, 2014-Ohio-5654, ¶ 26, citing *Hartman v. Hartman,* 9th Dist. Summit No. 22303, 2005–Ohio–4663, ¶ 13. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact-finder could base his or her judgment. *Tennant v. Martin–*

*Auer,* 188 Ohio App.3d 768, 2010-Ohio-3489, ¶ 16, citing *Cross Truck Equip. Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA–5758, 1982 WL 2911.

**{¶19}** It is well-established that separation agreements are generally subject to the same rules of construction as other types of contracts. *Brown v. Brown* (1993), 90 Ohio App.3d 781, 784, 630 N.E.2d 763. We must simultaneously recognize, however, that simply because a court, in its divorce decree, adopts the language of a separation agreement, "it does not thereby reduce the status of the decree to that of a mere contract." *See Robrock v. Robrock* (1958), 167 Ohio St. 479, 489, 150 N.E.2d 421 (internal citation omitted), overruled in part by *Nokes v. Nokes* (1976), 47 Ohio St.2d 1, 351 N.E.2d 174.

**{¶20}** "Whether or not a particular living arrangement rises to the level of lifestyle known as 'cohabitation' is a factual question to be initially determined by the trial court." *Moell v. Moell* (1994), 98 Ohio App.3d 748, 752, 649 N.E.2d 880, citing *Dickerson v. Dickerson* (1993), 87 Ohio App.3d 848, 851, 623 N.E.2d 237, 239. " '[C]ohabitation' describes an issue of lifestyle, not a housing arrangement." *Id.,* citing *Dickerson, supra,* at 850, 623 N.E.2d at 239. When considering this issue, a trial court should look to three principal factors**:** "(1) [A]n actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Moell, supra* (additional citations and internal quotations omitted). *See*, *also*, *Yarnell v. Yarnell,* 5th Dist. Delaware No. 05 CAF 0064, 2006–Ohio–3929, ¶ 43.

<u>Analysis</u>

**{¶21}** We first turn to the "actual[ly] living together" *Moell* factor. The record in the case *sub judice* clearly demonstrates that Appellee Merilee and R.V. maintain separate

residences, which we will herein refer to as the "Boulevard" home (appellee's) and the "Glennross" home (R.V.'s). As indicated in our recitation of facts, appellee is the mother of three children, one of whom is still a minor. R.V., a law enforcement officer, has four sons, ranging from age 14 to age 20. At the evidentiary hearing before the magistrate, appellee denied upon questioning by appellant's counsel that R.V. "stay[ed] there [Boulevard] almost every night," even though R.V. had given that impression in an earlier deposition. *See* Tr. at 23, 169. Appellee, in her testimony, recalled that she and R.V. started dating in May 2014, and have been engaged since May 2016, although no date for marriage has been set. Tr. at 40, 59. R.V. does not have a key to her Boulevard residence, although he sometimes parks his personal vehicle in the garage. Tr. at 76. However, it appears undisputed that appellee and R.V. are in an exclusive relationship.

**{¶22}** Appellant directs us *inter alia* to the following finding by the trial court: "The rest of the testimony [of appellee and R.V.] established that recently the two were spending most overnights (sleeping together) together. This would suggest more of a traditional marriage-like relationship where the two partners are sleeping under the same roof." Judgment Entry, June 22, 2018, at 7. *See* Appellant's Brief at 17.

**{¶23}** However, appellant leaves out the remainder of the trial judge's paragraph, which reads as follows: "But, at the same time, [R.V.] explained that he does not typically shower at Wife's [Appellee's] house, cannot park his [police] cruiser *** at Wife's house, and continues to maintain a separate residence. Based on these facts and those found by the magistrate, the Court finds that Mr. [R.V.] and Wife do not live together under a rent-free arrangement." *Id.*

**{¶24}** We note the record indicates that appellee and R.V. do not keep significant personal property at each other's residence, except for a toothbrush or basic hygiene items. R.V., to some degree at least, utilizes his residence on a daily basis. In other words, R.V. regularly showers and does laundry at his Glennross residence, parents his sons there, parks his cruiser there, changes in and out of his law enforcement uniform there, and spends his daytime off-work hours there. He also keeps groceries at his home, and packs a bag when he spends the night at appellee's Boulevard house.

**{¶25}** Thus, even though appellee and R.V. appear to have progressed to spending "most nights" together, the record supports that inescapable fact that they continue to maintain separate residences, as the trial court noted *supra*. The trial court also correctly summarized that of five leading cases from this Court on the present cohabitation issue, all involved fact patterns where the ex-spouse and the paramour shared a single residence. *See* Judgment Entry at 6; *Huston v. Huston, supra,* 2014-Ohio-5654; *Sage v. Gallagher, infra*, 2014-Ohio-1598; *Prokopchuk v. Prokopchuk,* 5th Dist. Stark No. 2011CA00265, 2012-Ohio-4480; *Bickham v. Bickham*, 5th Dist. Fairfield No. 11-CA-9, 2011-Ohio-4213; and *Yarnell v. Yarnell*, 5th Dist. Delaware No. 05 CAF 0064, 2006-Ohio-3929.[1] Furthermore, spending significant visitation time does not equate to living together. *Morford v. Morford,* 11th Dist. Ashtabula No. 2017-A-0044, 2018-Ohio-3439, ¶ 33.

**{¶26}** Appellant urges in his reply brief that R.V.s ownership and maintenance of his Glennross residence does not defeat appellant's cohabitation claim. In support, he

---

[1] *Bickham* did address a second residence, but it apparently was a summer home that was not utilized on a year-round basis. *Id.* at ¶ 20.

cites *Clark v. Clark*, 11th Dist. Trumbull No. 2005-T-0060, 168 Ohio App.3d 547, 2006-Ohio-4820, 860 N.E.2d 1080, which involved an obligee/ex-wife's fiancé working in another city during the week. Specifically, the fiancé in that case had "built, paid for, and [was living] with [obligee] in the home that he transferred to their joint names." Said home was in Champion Township, Trumbull County, in the northeastern part of Ohio, while the fiancé's job was in Columbus. In reversing the trial court's finding of no cohabitation, the Eleventh District Court observed: "The fact that [fiancé] owns another residence is irrelevant. His situation is like that of a traveling salesman who returns home on weekends. [Fiancé] spends his workweek in Columbus, but on the weekends, he stays in the house he built, the house that he jointly owns with his fiancée, and the house that he intends to reside in when he retires." *Id.* at ¶ 34.

**{¶27}** The facts of the case *sub judice* do not involve a jointly-owned residence, nor do R.V.'s work requirements involve such a significant commute as in *Clark*. We find *Clark* distinguishable, and we find no abuse of discretion in the trial court's determination that the "living together" factor of *Moell* was not demonstrated.

**{¶28}** In regard to the "shared expenses" *Moell* factor, we again note the trial court concluded, as recited above, that appellee and R.V. "do not live together under a rent-free arrangement." Judgment Entry, June 22, 2018, at 7. The record reveals that appellee and R.V. each pay their own individual mortgages. Furthermore, generally speaking, each one takes care of the expenses, utilities, and maintenance for their respective residences. Appellee and R.V. also each pay for their own insurance, real estate taxes, credit card bills, groceries, dining expenses, and automobile/travel expenses. *See* Magistrate's Decision at 3-5; Tr. at 325-328; Tr. at 353-356. R.V. does

his own laundry and appellee does her own. Appellant nonetheless points out various exceptions to some of the above general patterns, such as evidence that appellee and R.V. sometimes use each other's automobiles interchangeably. *See* Tr. at 126, 218. In addition, R.V. and/or his sons sometimes utilize shower facilities, internet connections, and cable television at appellee's Boulevard residence. Tr. at 85, 208-211, 346. Appellant also points out that appellee hosted a graduation party at the Boulevard location for one of R.V.'s sons. Tr. at 61-63.

{¶29} Appellant further seems to argue that appellee and R.V. still maintain a "communal pot of expenses," and he adds that they have given each other the PINs to their respective debit cards and have allowed each other "unfettered access" to the Boulevard and Glennross residences. Finally, appellant places a great deal of emphasis on the evidence concerning the splitting or advancing/reimbursing of the costs of hotel rooms and groceries for several vacations taken together by appellee and R.V.

{¶30} While appellant and appellee have both provided detailed arguments on the financial aspects of appellee's and R.V.'s relationship, we find insufficient grounds compelling us to overturn the trial court's determinations on this issue. Furthermore, in *Sage v. Gallagher,* 5th Dist. Richland No. 13 CA 64, 2014–Ohio–1598, ¶ 15, we cautioned against strict application of the *Moell* test, which, as indicated *supra,* includes consideration of the factor of a couple's sharing of financing and day-to-day incidental expenses. We expressed our determination that "* * * the overarching principle in such cases is that '[c]ohabitation contemplates a relationship that approximates, or is the functional equivalent of, a marriage.' " *Id.,* citing *Keeley v. Keeley,* 12th Dist. Clermont

Nos. CA99–07–075, CA99–080–080, 2000 WL 431362 (additional citation omitted). *See*, *also*, *Huston*, *supra*, at ¶ 33.[2]

**{¶31}** In that vein, we recognize that according to both appellee and the guardian ad litem, appellee's children and R.V.'s sons have referred to themselves or acted as "siblings." Tr. at 81, 271. Appellee also testified that R.V.'s sons, beginning in the summer of 2016, have often stayed at her Boulevard property three to four times per week. Tr. at 102-103. Indeed, the four-bedroom Boulevard house has a total of eight beds in it, enough for seven children and for appellee and R.V., although appellee testified that she "never looked at it that way." Tr. at 82-84. In addition, appellee's oldest daughter has introduced R.V. to her friends as "dad" and/or "step dad" since early 2015. Tr. at 80, 165-67. The GAL testified that appellee and R.V. "bounce ideas off each other" with regard to certain parenting decisions, and that appellee's emancipated son "does seem to lean on R.V." Tr. at 271, 272. R.V. has also been involved to a limited degree with some medical decisions involving the children (such as encouraging appellee's oldest daughter to take her prescription medication). Tr. at 93-96, 187-188.

### *Conclusion*

**{¶32}** Nonetheless, the intricacies of post-decree relationships may not lend themselves to clear-cut answers as to when a cohabitation clause has been legally triggered. In this instance, while appellant charges that his former spouse and her paramour, in order to maintain the continuity of spousal support, are voluntarily foregoing marriage and full residency under the same roof, we are unpersuaded upon full review

---

[2] Our analysis has admittedly been sparse on the "sustained duration" factor of *Morell*, but we find a detailed discussion thereon to be unnecessary based on our conclusions herein.

of the record that the trial court abused its discretion in declining to terminate the obligation to appellee under the facts and circumstances presented.

**{¶33}** Appellant's Second and Third Assignments of Error are overruled.

I.

**{¶34}** In his First Assignment of Error, Appellant Larry contends the trial court committed reversible error in concluding that Appellee Merilee was not cohabitating with R.V. under the standard of *State v. McGlothan*, *infra*. We disagree.

**{¶35}** Appellant essentially urges that cohabitation was established in this instance pursuant to the law set forth in *State v. McGlothan*, 138 Ohio St.3d 146, 2014-Ohio-85, 4 N.E.3d 1021. However, we observe that the Ohio Supreme Court in said case was analyzing the domestic violence criminal statute, R.C. 2919.25(A), which provides that no person shall knowingly cause or attempt to cause physical harm "to a family or household member." *See McGlothan* at ¶ 10. Our research indicates that in the appellate realm, *McGlothan* has only been referenced in criminal cases, with the exception of *Foster v. Foster*, 10th Dist. Franklin No. 15AP-1157, 2017-Ohio-4311, 92 N.E.3d 333. But even in *Foster*, we note the appellant argued *inter alia* that the lower court had erred "by applying domestic violence case law to the cohabitation dispute ***." *Foster* at ¶ 52. The Tenth District Court then determined that because "cohabitation has been established pursuant to the *Moell* factors in the instant case, any citation in the court below to *McGlothan* was harmless error." *Id.* at ¶ 54.

**{¶36}** Accordingly, we find *McGlothan* does not supply the preferred test in Ohio to determine "cohabitation" for questions of termination of spousal support, and we reject appellant's proposition that this Court, in *Bickham v. Bickham*, *supra*, "adopted" the

definition of that term from the domestic violence context for utilization in spousal support disputes. *See* Appellant's Brief at 14.

**{¶37}** Accordingly, based on our previous conclusions, we are unpersuaded that the trial court abused its discretion in declining to terminate spousal support to appellee under the facts and circumstances of this case.

**{¶38}** Appellant's First Assignment of Error is overruled.

IV.

**{¶39}** In his Fourth Assignment of Error, appellant maintains the trial court abused its discretion in ordering him to pay appellee's attorney fees in the amount of $6,307.50. We disagree.

**{¶40}** The pertinent statute, R.C. 3105.73(B) states as follows: "In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."

**{¶41}** An award of attorney's fees lies within the sound discretion of the trial court. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 481 N.E.2d 609. "Because a court addresses an award of [R.C. 3105.73(B)] attorney fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation." *Padgett v. Padgett,* 10th Dist. Franklin No. 08AP–269, 2008–Ohio–6815, ¶ 17.

**{¶42}** Appellant specifically challenges the trial court's award of $6,307.50 in attorney's fees (which sum actually represented 50% of appellee's incurred fees of $12,615.00) on several grounds. He maintains that (1) appellee's motion to modify shared parenting was settled by agreement; (2) appellee's motion to modify child support was denied; and (3) appellee's testimony indicated she was unclear as to what portion of her attorney's fee bill is allocable to her motion to modify child support, her motion regarding shared parenting, or the motion to terminate spousal support. *See* Tr. at 452-453. He also conditionally argues that should we reverse the trial court's decision to maintain spousal support, it would not be fair or equitable to award attorney fees to appellee.

**{¶43}** However, upon review of the record, and conceding that both sides pursued post-decree litigation in this dispute, we do not find the trial court's decision as to attorney fees to be unreasonable, arbitrary, or unconscionable. *Blakemore, supra.*

**{¶44}** Appellant's Fourth Assignment of Error is therefore overruled.

**{¶45}** For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Delaware County, Ohio, is hereby affirmed.

By: Wise, J.
Hoffman, P. J., and
Baldwin, J., concur.

JWW/d 0424