JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Appellant, Dione Kellermann ("Dione"), appeals various aspects of the trial court's judgment entry regarding her shared parenting plan. After a thorough review of the arguments, and for the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.
 {¶ 2} The facts that lead to this appeal began when Dione and Robert Lord ("Robert") divorced on November 13, 2000. The parties have one child, Brytnie (DOB: 9/18/1998). The divorce decree incorporated a shared parenting plan. Under that plan, the schedule was based on Robert's work schedule and to maximize Dione's weekend time with Brytnie.
 {¶ 3} On May 14, 2001, Robert filed a motion to terminate shared parenting for the reason that Dione was not allowing him to see Brytnie. The trial court's September 16, 2002 order designated Dione as residential parent for school purposes. The order also required the parties mediate disputes before pursuing litigation and to see Brytnie's counselor, Dr. Tamara Singh, to address Brytnie's mental health issues. The order created an addendum to the shared parenting plan, which indicated that Robert was to have possession of Brytnie when he had two regularly scheduled days off in a row.
 {¶ 4} On December 4, 2003, Robert filed a motion to modify the possession schedule and shared parenting plan and a motion to show cause and for attorney's fees. On January 29, 2004, Dione filed a motion to dismiss based on Robert's failure *Page 3 
to comply with the mediation provision of the shared parenting plan. The magistrate denied Dione's motion. Trial began on January 5, 2005. On March 23, 2005, Dione filed a motion to show cause and for attorneys fees, alleging that Robert had violated the existing court ordered possession schedule. On April 15, 2005, Dione filed a motion to dismiss. All hearings were concluded on May 3, 2005.
 {¶ 5} According to the magistrate, "at issue in these proceedings is the primary residential placement of Brytnie" The magistrate found that neither parent demonstrates that they are interested in the child's best interests. Robert requested that the shared parenting plan be modified so that Brytnie is primarily with him. In his affidavit, he stated, "since most of [Robert's] days off are during the weekday, [Robert] believes that it would be in Brytnie's best interest for him to be the primary possessory parent for [her], so that his weekday possession time can be maximized by having Brytnie after school and overnights during the week, while allowing weekend possession time to be maximized for [Dione]."
 {¶ 6} The magistrate found that numerous changes have occurred since the 2002 court order. Robert remarried and moved to another city; Dione was terminated from her employment and remains unemployed; and Brytnie began kindergarten. Importantly, the parties quarreled significantly over the child's placement in kindergarten. Brytnie's birthday misses the enrollment deadline at many schools. Dione wanted to enroll her in 2003, but Robert felt she was too young. Ultimately, Brytnie was enrolled in school that year. The magistrate suspected that Dione did this *Page 4 
to negatively impact Robert's parenting time, and that Robert objected because he wanted to see his daughter during the day. The magistrate found that both parents' reasons were selfish.
 {¶ 7} Because Dr. Singh was on maternity leave, the parties discussed various issues with Dr. Nicole Wagner, including the kindergarten situation, Robert's perceived notion that Dione had a drinking problem, and the amount of time Brytnie spends at her maternal grandmother's house. Eventually, Dione stopped attending sessions with Dr. Wagner. Dr. Wagner referred Brytnie to Maureen Riley-Behringer, a clinical social worker ("the social worker").
 {¶ 8} The social worker did not believe that Dione had an alcohol problem. The social worker "found no evidence of role reversal, which is present in children whose parents have alcohol problems." She found Brytnie to be academically, psychologically, and developmentally age appropriate. The social worker suggested that she should see Brytnie for biweekly sessions. Robert complied, but Dione did not.
 {¶ 9} The magistrate found that the parties have communication problems, but Dione does not believe they need counseling. Robert keeps journals and logs his time with his daughter. He hired a private investigator, who discovered that Brytnie spends a great deal of time at her maternal grandmother's house when she is supposed to be with her mother. The magistrate found that the school bus often drops the child at her grandmother's house and that, despite Dione's unemployment, *Page 5 
the child spends more time with her grandmother and less time with Dione. The magistrate also found that, despite Robert's concerns over Dione's alcohol problem, there is not enough evidence to establish that such a problem exists.
 {¶ 10} The magistrate found that Dione is voluntarily unemployed and that she often promises to participate in Brytnie's school events, but does not follow through. She did not attend the kindergarten graduation, does not attend parent conferences, has not met Brytnie's teacher, and did not fulfill lunch mom duties, as she had promised to do.
 {¶ 11} The magistrate found that Robert is the more involved parent. He has met Brytnie's teachers, attended open house and graduation, and gone to counseling sessions, even when Dione has not. The magistrate found that Dione tries to make it difficult for Robert to parent Brytnie. When he calls, Dione almost always tells him that their daughter is sleeping or unavailable, even during the day.
 {¶ 12} In the past, Dione made allegations that Robert was abusing their daughter. The magistrate found that there is no evidence to support that contention, that the parties resolved motions by agreement even after the abuse allegations, and that there have been no abuse convictions.
 {¶ 13} The magistrate found that it remains in Brytnie's best interest that shared parenting continue, but that it would be in the child's best interest to make her primary residence with Robert. Dione has been unable to cope with the day-to-day responsibilities of being a parent. She is unemployed and still manages to find little *Page 6 
time to spend with her daughter or to attend school functions. Dione also presented no evidence of searching for a job.
 {¶ 14} The magistrate determined the appropriate amount of child support Dione should pay to Robert, which she based on an imputed income of $86,000. Finally, the magistrate found that Dione was in contempt for not giving Robert telephone access to Brytnie.
 {¶ 15} On January 17, 2006, the magistrate's decision and Civ.R. 53(E)(4)(c) interim order were filed. On April 28, 2006, Dione filed a motion to vacate the interim order, which was denied on May 19, 2006. On June 15, 2006, Dione filed an appeal of the court's denial of her motion to vacate. Robert filed a motion to dismiss the appeal, which was granted on August 8, 2006.
 {¶ 16} Dione filed objections to the magistrate's decision. On January 7, 2007, the trial court overruled Dione's objections.
 Review and Analysis {¶ 17} Dione brings this appeal, asserting 14 assignments of error for our review.[1] Her appeal "challenges the trial court's denial of [her] Objections to Magistrate's Decision Immediate Relief Justified dated January 17, 2006."
 {¶ 18} The standard of review for domestic relations cases is to determine whether the trial court abused its discretion in reaching its judgment. Booth v. Booth *Page 7 
(1989), 44 Ohio St.3d 142, 542 N.E.2d 1028. "This is true in cases reviewing an order relating to alimony, a division of the marital property, or a custody proceeding. Since it is axiomatic that a trial court must have discretion to do what is equitable based upon the facts and circumstances of each case, it necessarily follows that a trial court's determination in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." Id. at 144. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 Exclusion of Evidence {¶ 19} In her first assignment of error, Dione argues that the trial court erred when it adopted the magistrate's decision. More specifically, she alleges that the magistrate's decision was based on incomplete evidence and unproven assumptions regarding Robert's period of unemployment and Dione's abuse allegations. This argument is without merit.
 {¶ 20} During trial, the magistrate determined that she would only allow evidence of matters that occurred after September 2002 because that was the date of the last order regarding the allocation of parental rights. We find that the magistrate did not abuse her discretion in excluding evidence of matters that occurred prior to that time. *Page 8 
 {¶ 21} Dione argues that the magistrate improperly prevented her from cross-examining police chief Joseph Donnelly regarding Robert's past employment termination. She also alleges that it was improper for the magistrate to conclude that Dione had previously accused Robert of abusing Brytnie. We disagree. The report of Dr. Nancy Huntsman, from the Court's Family and Conciliation Department, supported the magistrate's finding that Dione was partially to blame for Robert's termination. There was also evidence in the record that Dione made allegations of abuse against Robert.
 {¶ 22} Even if the magistrate improperly excluded evidence, we find it would be harmless error. There was a myriad of evidence on which the magistrate based her decision to modify the shared parenting plan. She did not rely on evidence, or lack of evidence, of only the two issues discussed above. Accordingly, appellant's first assignment of error is overruled.
 Modification of Shared Parenting Plan {¶ 23} Because Assignments of Error II, III, and IX relate to the requirements for the modification of the shared parenting plan, they will be addressed together.
 {¶ 24} The crux of Dione's arguments within these assignments of error is that the trial court erred when it failed to properly consider the factors under R.C. 3109.04. For the reasons below, we find no merit in her arguments.
 {¶ 25} Dione argues that the magistrate erred when it changed Brytnie's residential parent without determining if the benefits outweighed the harm, as *Page 9 
required under R.C. 3109.04(E)(1)(a)(iii). She further argues that the trial court erred when it did not focus on Brytnie's best interests under R.C. 3109.04(E)(1)(a). Finally, she argues that the trial court should have dismissed Robert's motion to modify because Robert failed "to establish that a change in circumstances had occurred since the time of the last court order" as required under R.C. 3109.04(E)(1)(a).
 {¶ 26} As Dione correctly argues, R.C. 3109.04(E)(1)(a) governs the modification of an existing parenting decree.[2] The court must determine whether a change in circumstances has occurred, analyze best interest of the child factors, and find that the benefits of modification outweigh any harm that the child will experience. R.C.3109.04(E)(1)(a). Although it appears that the magistrate did not specifically analyze the factors under the statute, a review of the findings of fact and conclusions of law shows that the magistrate's decision to modify the parenting plan is supported by the evidence. *Page 10 
 Change in Circumstances {¶ 27} First, we consider whether the evidence shows that a change in circumstances has occurred since the planned parenting plan was implemented. Since the last court order, Robert has moved to another city and remarried; Brytnie started attending school; Dione's employment was terminated; Dione has remained unemployed; Dione's mother has spent more time with Brytnie; Dione has shown resistance to counseling; and Dione has failed to take Brytnie to counseling.
 {¶ 28} We take note that Dione argues that remarriage and new job circumstances are usually not enough to demonstrate a change in circumstances; however, we find that the combined effect of all the above changes demonstrates a significant change in circumstances.
 Best Interests {¶ 29} Next, we consider whether naming Robert the residential parent would be in Brytnie's best interests. Under R.C. 3109.04(F)(1), the magistrate must consider certain factors when determining the child's best interest. Those factors include the parents' wishes; the child's interaction with her family and others; the child's adjustment to home, school, and community; the mental and physical health of all parties; and which parent is most likely to honor court ordered visitation. R.C.3109.04(F)(1).
 {¶ 30} Both parties wish to be Brytnie's residential parent. The magistrate found that Brytnie has a good relationship with both parents and interacts favorably *Page 11 
with her step-family, but that she spent less time with her mother because she was at her grandmother's house often. Brytnie says she misses her mother when she stays with her grandmother; however, because she spends so much time with her grandmother, Brytnie has a good relationship with her. The facts show that Brytnie spends the most time with her father and grandmother and the least amount of time with her mother. Brytnie has adjusted to both of her parents' homes, does well in school, and has made friends.
 {¶ 31} The magistrate found that, at times, Dione "has been unable to honor * * * court orders" regarding visitation. Dr. Nancy Huntsman found that Robert would honor and facilitate parenting time. The magistrate found that Dione has "gotten herself into a downward spiral and has been unable to right herself." She is not attempting to find a job, and "something is going on in her life to make her unable to remember details of her life with Brytnie." Considering these factors, the record supports a conclusion that it is in Brytnie's best interest to have her father as primary residential parent. *Page 12 
 Harm Versus Benefit {¶ 32} Finally, we consider whether the harm to be caused by a change in environment is outweighed by the advantages of the change. Brytnie loves both of her parents. When she is with her father, he spends a lot of time with her. When she is with her mother, she spends a lot of time with her grandmother. Her father takes part in her school life, while her mother does not. The magistrate found that the "change in primary residence will be difficult for Brytnie, but any change would be difficult." We conclude that the record supports a finding that the benefit of the change outweighs any harm.
 {¶ 33} Accordingly, we find that because all of the elements under R.C. 3109.04 have been met, it was not an abuse of discretion to modify the shared parenting plan. Accordingly, Dione's second, third, and ninth assignments of error are overruled.
 Visitation Schedule {¶ 34} In her sixth assignment of error, Dione argues that the court abused its discretion when it failed to consider factors under R.C.3109.051 in creating a visitation schedule between Brytnie and her father; however, as discussed above, the appropriate factors are found under R.C. 3109.04, not R.C. 3109.051. "R.C. 3109.051 does not apply to the modification of parental visitation rights; rather, the section applies only to the original establishment of parental visitation rights in a divorce, dissolution, legal separation or annulment proceeding and to the establishment and/or modification of other person visitation rights." Jacobs v. Jacobs *Page 13 
(Apr. 19, 1995), Wayne App. No. 2911. Accordingly, Dione's sixth assignment of error is overruled.
 Imputation of Income/Voluntary Unemployment {¶ 35} Because Dione's fourth and fifth assignments of error are substantially interrelated, they will be addressed together.
 {¶ 36} Dione argues that the trial court erred when it adopted the magistrate's decision. More specifically, she alleges that the magistrate erred in finding that she was voluntarily unemployed and that the magistrate's decision to impute income was improper under R.C.3119.01. We find merit in this argument.
 {¶ 37} The test for imputing income has two parts. The first part requires that Dione be voluntarily underemployed or voluntarily unemployed. R.C. 3119.01(C)(11). The second part requires an analysis of further statutory factors set out under R.C. 3119.01(C)(11)(a). The magistrate determined that Dione was voluntarily unemployed and that it would be proper to impute income to Dione for purposes of calculating child support.
 {¶ 38} The magistrate found that Dione is "currently unemployed" and that she was terminated "for cause." Importantly, the magistrate found that Dione "presented no evidence of making any attempt to find employment since January 2003 when she became unemployed." Because Dione presented no evidence that she was looking for employment, we find that it was not an abuse of discretion to find her voluntarily unemployed. *Page 14 
 {¶ 39} A review of the record indicates that the magistrate did not analyze all of the statutory factors under R.C. 3119.01(C)(11)(a). The magistrate found that, according to Dione's tax return, her income in 2003 was $10,991. The magistrate also found that, at the time of the divorce, Dione earned $86,000. "With her voluntary unemployment and her failure to seek employment, * * * income should be imputed to [her] in the amount that she was earning at the time of the last court order with regard to child support. * * * [Dione's] income should be $86,000."
 {¶ 40} Dione argues that the magistrate abused her discretion because she did not consider all of the statutory factors; however, Robert argues that Dione provided no evidence regarding any of those factors, such as the availability of employment in the area, her education, her past work experience, or her skills.
 {¶ 41} We find that the magistrate properly found Dione voluntarily unemployed, but abused her discretion when she did not consider all of the statutory factors in determining whether to impute income. Accordingly, Dione's fourth assignment of error is sustained, and her fifth assignment of error is overruled.
 Contempt of Court — Dione {¶ 42} In her seventh assignment of error, Dione argues that the trial court erred when it found her in contempt of court. More specifically, she argues that "contempt of court is not consistent with the applicable statute, case law or the evidence." This argument is without merit. *Page 15 
 {¶ 43} Dione first argues that Robert's December 4, 2003 motion to show cause did not comply with R.C. 2705.031, which requires the issuance of a summons in a contempt action. She alleges service was defective.
 {¶ 44} The magistrate found that, "at the beginning of the proceedings Ms. Kellermann through her legal counsel requested that Mr. Lord's motion to show cause be dismissed based upon the fact that Ms. Kellermann did not receive the statutory notice of the possible outcomes of a contempt proceeding." However, the magistrate found that Dione was represented by legal counsel throughout the proceedings, who could inform her of the possible outcomes of contempt. The magistrate also found that "the court is required to send orders to appear when show cause motions are filed as a result of failure to pay child support or failure to comply with parenting time issues. Therefore, the magistrate finds that Ms. Kellermann was not prejudiced by failing to receive the statutory notices with regard to findings of contempt."
 {¶ 45} Dione also alleges that Robert's motion to show cause failed to state the specific provisions of a prior order of which Dione was not in compliance. However, Dione did not raise this issue in her objections; therefore, it is waived.
 {¶ 46} Dione finally claims that the language of the parties' order providing for "reasonable" telephone access to Brytnie is too vague. InO'Connor v. O'Connor (Mar. 26, 1999), Franklin App. No. 90AP-527, this court found that "the court may, as *Page 16 
with any contract, ascertain indefinite or uncertain terms * * *." Therefore, the magistrate could construe the reasonable amount of telephone contact required under the agreement.
 {¶ 47} There was evidence that supported Robert's contention that Dione was not abiding by the terms of the agreement. Dione refused to give Robert her new telephone number, instead telling him that it was in the phone book, and he could look it up. Once, when Dione told Robert that Brytnie was sleeping and could not talk on the phone, Brytnie picked up the other line. Other times, Dione said Brytnie was sleeping, although it was the middle of the day. Finally, the vast number of times that Brytnie was "unavailable" or "asleep" is evidence that Dione was preventing reasonable telephone access.
 {¶ 48} Based on the above evidence, we find that the trial court did not abuse its discretion in finding Dione in contempt of court. Accordingly, Dione's seventh assignment of error is overruled.
 Motion to Dismiss {¶ 49} In her eighth assignment of error, Dione argues that the trial court erred when it denied her motion to dismiss. More specifically, she alleges that Robert failed to comply with the requirements of existing court orders. This argument is without merit.
 {¶ 50} The trial court's September 16, 2002 order required the parties to take certain actions before resorting to litigation. The order reads, "the parties shall *Page 17 
consult on a regular basis with Tamara Singh * * * any issues or concerns that either party has regarding [Brytnie] shall be brought to the attention of Dr. Singh or her successor before any other legal action is taken regarding that issue or concern * * *." The order also contained a mediation provision which provided that if there was a parenting dispute, the parties must mediate the dispute before initiating litigation.
 {¶ 51} After the September 16, 2002 order, the parties began counseling with Dr. Singh. After Dr. Singh went on maternity leave, she referred the matter to Dr. Nicole Wagner and scheduled a meeting between herself, the family, and Dr. Wagner. Dione did not show up at the meeting. Robert met with Dr. Wagner 21 times, while Dione met with her only eight times. In addition, Robert spoke to Dr. Wagner about the shared parenting plan on a few occasions.
 {¶ 52} A review of the above evidence shows that Robert tried to seek Dr. Wagner's help and that Dione refused to cooperate by attending sessions. Further, the magistrate found that "the parties were given a fifteen minute status conference and then attempted mediation, a month and half later both parties agreed that mediation failed after one meeting."
 {¶ 53} Based on the evidence, we find that the trial court did not abuse its discretion when it denied Dione's motion to dismiss. Accordingly, Dione's eighth assignment of error is overruled. *Page 18 
 Admission of Evidence {¶ 54} In her tenth assignment of error, Dione argues that the magistrate relied on improperly admitted evidence and hearsay testimony. More specifically, she alleges that the magistrate's reliance on testimony from private investigators, the introduction of the private investigators' reports, and Brytnie's statement to her father about Dione's drinking were improperly admitted and prejudicial to her. These arguments are without merit.
 {¶ 55} Private investigators, Michael Lewis and Frank Jurkoshek, testified regarding the investigations they undertook on behalf of Robert. According to Dione, "it was discovered on cross that Lewis testified to many activities that he did not personally observe." However, on cross-examination, Dione questioned Lewis about statements in his report that included dates he was not personally at the surveillance. Therefore, she waives that issue on appeal.
 {¶ 56} Dione also argues that the reports of the private investigators were inadmissible hearsay. However, under Evid.R. 803(6), "a memorandum, report, record, or data compilation, * * * of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or *Page 19 
circumstances of preparation indicate lack of trustworthiness * * *" is not excluded by the hearsay rule. Therefore, the investigators' reports were admissible.
 {¶ 57} Dione also lists a variety of other aspects of the testimony of both investigators that she feels were improperly admitted. We find that the magistrate ultimately relied on very little of the testimony and reports of the investigators. The only finding of fact in the magistrate's report relating to the private investigators was that "Brytnie spends a lot of time with her maternal grandmother. * * * This was documented by the surveillance done by the private investigator * * *."
 {¶ 58} A review of the record makes it clear that the magistrate's decision was based on a multitude of other evidence, and the outcome would have been the same, even without the testimony or reports of the investigators.
 {¶ 59} Finally, Dione alleges that the magistrate improperly relied on Robert's testimony regarding what Brytnie told him about Dione's alleged drinking problem. However, again, a review of the entire record and the magistrate's report shows that the magistrate made her decision based on all the evidence, which, in its totality, supports her decision to modify the shared parenting plan. Further, the magistrate concluded that there was not enough evidence to determine that Dione has a drinking problem. Therefore, we find that the testimony, even if it was impermissible hearsay, was not prejudicial to Dione. Accordingly, Dione's tenth assignment of error is overruled. *Page 20 
 Time Spent With Grandmother {¶ 60} In her eleventh assignment of error, Dione argues that the magistrate's conclusion that Brytnie spends a lot of time with her grandmother was not supported by the evidence. This argument is without merit.
 {¶ 61} The magistrate found that "Brytnie spends a lot of time with her maternal grandmother, Vickie Kellermann. To some extent this was documented by the private investigator * * *. Brytnie is dropped off at her grandmother's residence by the school bus after school. * * * Ms. Kellermann has done nothing to stop [the amount of time spent there]." Although Dione is unemployed, she either encourages, or does nothing to stop, the amount of time Brytnie spends at her grandmother's house. Dione testified that she is often at her mother's house when Brytnie is dropped off. In addition, it would appear that Brytnie spends a lot of time there because she told the social worker that she misses her mother when she is with her grandmother. Further, the grandmother's testimony, that she cannot remember how much time Brytnie spends at her house, indicates that she may be there a lot.
 {¶ 62} Based on the amount of evidence, we find that the magistrate's conclusion that Brytnie spends a substantial amount of time with her grandmother was supported by competent credible evidence. Accordingly, Dione's eleventh assignment of error is overruled.
 Attorney's Fees *Page 21 {¶ 63} Dione argues in her twelfth assignment of error that the trial court erred when it failed to award her attorney's fees and failed to address the appropriate factors under R.C. 3105.73. This argument is without merit.
 {¶ 64} The award of attorney's fees is within the discretion of the trial court. Schultz v. Schultz (May 2, 1996), Franklin App. No. 95APF10-1387. Under R.C. 3105.73(B), "in any post-decree motion or proceeding that arises out of an action for divorce * * * the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate * * *."
 {¶ 65} Dione alleges that she should be awarded attorney's fees because Robert failed to comply with the September 16, 2002 order; Robert has reasserted issues that he previously raised; Robert has filed 13 motions since the divorce; Dione is unemployed; and Robert has a comfortable income.
 {¶ 66} Both parties filed motions for attorney's fees. The magistrate found that the parties have incurred $93,917.85 in fees and expenses. "They incurred these fees and expenses for the fight they each believed they needed and maybe should have had at the time of the divorce." The magistrate ordered that they each pay their own attorney's fees.
 {¶ 67} We do not find that the magistrate abused her discretion in failing to award Dione attorney's fees and in deciding to have each party pay their own fees. *Page 22 
The magistrate based her decision on the conduct of the parties, which is acceptable under the statute. Accordingly, Dione's twelfth assignment of error is overruled.
 Contempt of Court — Robert {¶ 68} In her thirteenth assignment of error, Dione argues that the trial court erred when it failed to hold Robert in contempt of court. On March 23, 2005, Dione filed a motion to show cause against Robert alleging that he was not entitled to possession of Brytnie during the weekend of March 18-20, 2005.
 {¶ 69} On March 18, 2005, Robert picked up Brytnie from school. Two days earlier, his work shifts had changed, allowing him to be off that weekend. Under the shared parenting agreement, when Robert's days off fell on a Friday/Saturday or Sunday/Monday, he was to have Brytnie on the non-weekend day. If he had four days off in a row, he was to have Brytnie from Tuesday through Thursday. The magistrate found that "the possession schedule did not contemplate Mr. Lord having off from Friday through Sunday because his old schedule did not provide for regular weekends off."
 {¶ 70} On March 18, 2005, Brytnie did not get off the school bus where her mother was waiting for her. Dione eventually learned from her mother's friend that Robert had picked up Brytnie. All weekend, Dione chose not to contact Robert about the alleged mixup. Robert believed that he had an agreement with Dione, through the guardian ad litem, about his having Brytnie that weekend. Dione did not recall such an agreement. *Page 23 
 {¶ 71} The magistrate found that, although there was no court ordered change in schedule that weekend, she was not going to hold Robert in contempt. The magistrate did not believe Dione's version of events because it was "inconceivable that if the events happened as described by Ms. Kellermann that she did not call the police as soon as the child did not arrive." The magistrate also found that "obviously there was confusion between the parties as to whether or not they had made a decision with regard to parenting time on that weekend."
 {¶ 72} We find that, in light of the magistrate's findings discussed above, the magistrate did not abuse her discretion in failing to hold Robert in contempt. Accordingly, Dione's thirteenth assignment of error is overruled.
 Immediate Relief {¶ 73} In her final assignment of error, Dione argues that the trial court erred when it upheld the magistrate's conclusion that immediate relief is justified, although the magistrate made no findings to support that conclusion. This argument is without merit.
 {¶ 74} The magistrate found that immediate relief was necessary. She found that "it is necessary to implement this order immediately in order for the parties to begin to educate Brytnie of the changes to come in order to make her transition from living primarily with her mother to living primarily with her father as smooth as possible." *Page 24 
 {¶ 75} Clearly, in this case, nearly all of Brytnie's life has been consumed with litigation and disagreement over the shared parenting plan. She is often at her grandmother's house when she should be with her mother. Changing from one residential parent to another is a stressful change to make for a young child. The magistrate felt that the best way to deal with that change was to order immediate relief. Essentially, the magistrate was looking out for Brytnie's best interest.
 {¶ 76} We find that it was not an abuse of discretion to order immediate relief based on the facts of this case. Accordingly, Dione's fourteenth assignment of error is overruled.
 {¶ 77} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., JUDGE
 JAMES J. SWEENEY, A.J., and ANN DYKE, J., CONCUR *Page 25 
 APPENDIX
Appellant's Fourteen Assignments of Error:
I. The trial court erred when it adopted the magistrate's decision since the decision was based on incomplete evidence and unproven assumptions as a result of the magistrate's evidentiary ruling to preclude evidence that occurred prior to September of 2002.
II. The trial court erred as a matter of law when it adopted the magistrate's decision to change Brytnie Lord's residential parent without determining that the benefit of such modification outweighed the harm of the modification.
III. The trial court erred as a matter of law in adopting the magistrate's decision where the magistrate's findings and conclusions focus on Kellermann's conduct instead of Brytnie's best interests.
IV. The trial court erred as a matter of law when it adopted the magistrate's conclusions to impute income to Kellermann for purposes of child support and health care expenses, without consideration of the factors in Ohio Revised Code Section 3119.01.
V. The court erred when it adopted the magistrate's finding that Kellermann was voluntarily unemployed since the finding contradicted the magistrate's conclusions about Kellermann.
VI. The trial court erred when it adopted the magistrate's decision as it relates to Brytnie's visitation with her mother since the magistrate failed to address the statutory factors set forth in O.R.C. S 3109.051.
VII. The trial court erred when it adopted the magistrate's decision that Kellermann was in contempt of court, where this conclusion contradicts applicable case law, local rules, and statue.
VIII. The trial court erred when it adopted the magistrate's decision which denied Kellermann's motion to dismiss where appellee failed to comply with the requirements of existing court orders as a prerequisite to litigation.
IX. The trial court erred when it adopted the magistrate's decision since the magistrate denied Kellermann's Civil Rule 41 Motion even though Lord failed to meet his burden of proof imposed by O.R.C.3109.04. *Page 26 
X. The trial court erred when it adopted the magistrate's decision since the magistrate relied on improperly admitted evidence and hearsay evidence to support her conclusions, in violation of Dione's due process rights.
XI. The trial court erred when it adopted the magistrate's conclusion that Brytnie spends a substantial amount of time with her maternal grandmother where the conclusion is not supported by competent credible evidence.
XII. The trial court erred when it adopted the magistrate's decision which failed to award Kellermann attorney fees and failed to address the appropriate factors set forth in O.R.C. Section 3105.73.
XIII. The trial court committed prejudicial error when it failed to hold Lord in contempt of court despite his violation of the provisions of the court ordered possession schedule.
XIV. The trial court erred when it upheld the magistrate's conclusion that immediate relief is justified even though the magistrate made no findings in support of this conclusion.
[1] Appellant's assignments of error are listed in the Appendix to this Opinion.
[2] Robert argues that the appropriate statute to analyze is R.C.3109.04(E)(2)(b); however, "where the modification to a shared parenting plan does not involve reallocation of parental rights, the court may modify the plan based upon a finding that the change is in the best interests of the children under R.C. 3109.04(E)(2)(b). [However], "because the modification herein does involve a substantial change in parental rights, we apply R.C. 3109.04(E)(1)(a)." Rodkey v. Rodkey, Cuyahoga App. No. 86884, 2006-Ohio-4373. In addition, R.C.3109.04(E)(1)(a) "must be applied to those modifications that substantially change the allocation of the parties' parental rights, whereas" R.C. 3109.04(E)(2)(b) "applies to mere modifications of the terms of a shared parenting agreement, such as a transportation provision." Bauer v. Bauer, Clermont App. No. CA2002-10-083, 2003-Ohio-2552. *Page 1